# UNITED STATES DISTRICT COURT
## DISTRICT OF KANSAS
### (Topeka Docket)

UNITED STATES OF AMERICA,

        Plaintiff,

      v.                     CASE NO.: <u>11-40078-02-JAR</u>

MARCUS D. ROBERSON,

        Defendant.

---

### GOVERNMENT'S RESPONSE TO DEFENDANT'S
### MOTION UNDER 28 U.S.C. § 2255 TO VACATE SENTENCE
### (Docs. 817 and 817-1)

APPEAR NOW the United States of America, by and through Jared S. Maag, Assistant United States Attorney, and in response to the defendant's motion to vacate his sentence (Doc. 817, Mot. to Vacate at 1-12; Doc. 817-1 Mem. in Support at 1-66), respectfully submit the following:

1

## I.    PROCEDURAL HISTORY[1]

The following highlights the relevant procedural history as it applies to the defendant:

On August 24, 2011, the defendant, along with Virok Webb, Jamaica L. Chism, Alisha A. Escobedo, and Megan N. Fuller, was indicted on one count of conspiracy to distribute crack cocaine, in violation of 21 U.S.C. § 846.  (Doc. 1, Indictment at 1-2.)

On October 19, 2011, a superseding indictment was filed charging the defendant, along with Virok Webb, Jamaica L. Chism, Alisha A. Escobedo, Megan N. Fuller, Kennin Dewberry, Caress Jackson, and Keishana Johnson, with one count of conspiracy to distribute crack cocaine, in violation of 21 U.S.C. § 846, and one count of conspiracy to distribute powder cocaine, in violation of 21 U.S.C. § 846. (Doc. 50, Superseding Indictment at 1-5.)  The defendant, along with co-defendant Virok Webb, was also charged with one count of murder to prevent another from providing information concerning a federal crime to a law enforcement officer of the United States, in violation of 18 U.S.C. § 1512(a)(1)(C).  (*Id.* at 3-5.)

---

[1]   This Court is well-acquainted with the factual history of the case having presided over the defendant's trial as well as the trial of co-defendant Kennin Dewberry.  To that end, the government will not set forth an extensive recitation of the factual backdrop to this matter; rather, the government will provide the necessary facts within each of the defendant's specific challenges to trial and appellate counsel's effectiveness.  The facts of this case are fully set forth in the Presentence Investigation Report ("PSIR"), (Doc. 735, PSIR at 7-16, ¶¶ 22-67), and this Court's Memorandum and Order denying the defendant's several post-conviction motions.  (Doc. 700, Mem. & Order at 1-31.)

On March 6, 2014, a jury found the defendant guilty on all three counts. (Doc. 525, Verdict Form at 1-4.)

On July 14, 2015, this Court denied the defendant's several motions for judgment of acquittal and new trial. (Doc. 700, Mem. & Order at 1-31.)

On December 2, 2015, the defendant was sentenced to a controlling term of Life imprisonment. (Doc. 737, Judgment at 2.)

On August 15, 2016, the defendant filed a motion pursuant to Fed. R. Crim. P. 33 seeking a remand for new trial. (Doc. 787, Def. Mot. for Remand at 1-11.)

On August 16, 2016, the government submitted a response to the defendant's motion for remand. (Doc. 788, Gov't Resp. at 1-4.)

On November 16, 2016, the United States Court of Appeals for the Tenth Circuit affirmed the defendant's conviction and sentence. *United States v. Roberson*, 664 Fed.Appx. 743, 750 (10th Cir. 2016) (unpublished). On appeal, the defendant argued (1) that the jury instructions on murder to prevent communication with a law enforcement officer did not leave open the possibility that the jury was able to impermissibly convict him as to potential communications with only local law enforcement officers, rather than federal law enforcement officers; (2) that the government violated *Brady v. Maryland*, 373 U.S. 83 (1963); (3) that there was insufficient evidence to convict him of murder; and (4) that there was insufficient evidence to demonstrate that he was involved in a conspiracy. *Id*. at 743. The

defendant did not file a petition for writ of certiorari with the Supreme Court of the United States challenging the Tenth Circuit's decision.

On November 22, 2016, this Court issued a Memorandum and Order directing that the defendant file either (1) a motion to withdraw his Rule 33 motion and a notice of his desire not to have the motion re-characterized as a request for § 2255 relief; or (2) a motion amending the Rule 33 motion to include all claims that can be brought under § 2255.  (Doc. 792, Mem. & Order at 1-6.)

On December 9, 2016, the defendant filed a motion withdrawing his Rule 33 motion.  (Doc. 795, Def. Mot. to Withdraw at 1-2.)

On December 13, 2016, this Court issued an Order granting the defendant's motion to withdraw his Rule 33 motion.  (Doc. 796, Order at 1.)

On July 21, 2017, the defendant filed the instant motion under 28 U.S.C. § 2255 seeking to vacate his sentence.  (Doc. 817, Def. Mot. to Vacate at 1-12.)  The defendant additionally filed a memorandum in support of his argument.  (Doc. 817-1, Mem. in Supp. at 1-66.)[2]

The government's response is due on September 27, 2017.  (Doc. 825, Order ** Text Entry Only** at 1.)

---

[2]  The defendant's motion is timely under 28 U.S.C. § 2255(f)(1) ("A 1-year period of limitation shall apply to a motion under this section.  The limitation period shall run from the latest of—(1) the date on which the judgment of conviction becomes final.").  *See also Clay v. United States*, 537 U.S. 522, 525 (2003) (judgment of conviction becomes final for purposes of § 2255(f)(1) when the time for seeking certiorari expires); *United States v. Burch*, 202 F.3d 1274, 1277 (10th Cir. 2000) (a conviction becomes final upon completion of direct review).

II.    GROUNDS RAISED BY THE DEFENDANT IN HIS § 2255 MOTION

In his motion to vacate, the defendant raises eight separate and distinct claims of ineffective assistance of counsel.  (Doc. 817-1, Mem. in Supp. at 4-66.)  Those grounds are as follows:

Ground One:  Trial and appellate counsel were ineffective for failing to challenge Count Three of the Superseding Indictment on grounds that this particular charge failed to provide adequate notice of a federal offense.  (*Id*. at 4-15.)

Ground Two:  Trial counsel was ineffective for failing to properly challenge the testimony of a government witness.  (*Id*. at 15-24.)

Ground Three:  Both assigned trial counsel were ineffective for failing to submit alleged affidavits of a co-conspirator which purportedly supported the defendant's assertion that he was not a member of the conspiracy.  (*Id*. at 24-29.)

Ground Four:  Trial counsel was ineffective for failing to challenge, pursuant to Fed. R. Evid. 801(d)(2)(E), the testimony of a government witness.  (*Id*. at 29-34.)

Ground Five:  Trial counsel was ineffective for failing to obtain the cell phone records of named co-conspirators who appeared as government witnesses.  (*Id*. at 34-47.)

Ground Six:  Trial counsel was ineffective by failing to properly challenge the amount of controlled substances attributable to the defendant.  (*Id*. at 47-50.)

Ground Seven:  Trial counsel was ineffective by (1) failing to inform the defendant that the government filed an Information pursuant to 21 U.S.C. § 851, and (2) failing to object to the prior convictions used to support the government's Information.  (*Id*. at 50-53.)

Ground Eight:  Trial counsel was ineffective by failing to obtain newly discovered evidence immediately following the trial.  (*Id*. at 53-55.)

III.    STANDARDS OF REVIEW

Trial Counsel

The standard by which this Court determines if trial counsel was ineffective is well-settled.  Initially, the defendant must demonstrate that trial counsel's performance fell below an objective standard of reasonableness.  *Strickland v. Washington*, 466 U.S. 668, 687-88 (1984).  This extraordinarily deferential standard presumes that counsel's conduct fell within a wide range of reasonable professional assistance.  *Id*. at 689.  Second, the defendant must show that trial counsel's deficient performance prejudiced his defense.  *Id*. at 692.  Stated differently, the defendant must show that there is a reasonable probability that, but for his trial counsel's deficient conduct, the result of the proceeding would have been different.  *Id*. at 694. Finally, this Court may render a decision on the defendant's claim under either part of the *Strickland* standard; and, thus, the defendant's failure to satisfy *both* prongs is fatal to his motion.  *See United States v. Orange*, 447 F.3d 792, 796-97 (10th Cir.

2006) (defendant must demonstrate both *Strickland* prongs to establish his claim); *Strickland*, 466 U.S. at 697 ("The performance component need not be addressed first. 'If it is easier to dispose of an ineffectiveness claim on the ground of lack of sufficient prejudice, which we expect will often be so, that course should be followed.' "); *Romano v. Gibson*, 239 F.3d 1156, 1181 (10th Cir.2001) (court can affirm the denial of habeas relief on whichever *Strickland* prong is the easier to resolve).

Appellate Counsel

A claim that appellate counsel performed ineffectively is similarly addressed under the *Strickland* standard. Here, the defendant must show "(1) constitutionally deficient performance, by demonstrating that his appellate counsel's conduct was objectively unreasonable, and (2) resulting prejudice, by demonstrating a reasonable probability that, but for counsel's unprofessional error(s), the result of ... the appeal ... would have been different." *United States v. Turrentine*, 638 Fed.Appx. 704, 705 (10th Cir. 2016) (unpublished) (quoting *Cargle v. Mullin*, 317 F.3d 1196, 1202 (10th Cir. 2002).) An equally high standard of deference is applied when addressing appellate counsel's alleged ineffectiveness. *United States v. Cook*, 45 F.3d 388, 394 (10th Cir. 1995); *Smith v. Murray*, 477 U.S. 527, 536 (1986) ("[The] process of 'winnowing out weaker arguments on appeal and focusing on' those more likely to

prevail, far from being evidence of incompetence, is the hallmark of effective appellate advocacy.") (internal citation omitted).

As further held by the Tenth Circuit:

> Although "[a] claim of appellate ineffectiveness can be based on counsel's failure to raise a particular issue on appeal, ... counsel need not (and should not) raise every nonfrivolous claim, but rather may select from among them in order to maximize the likelihood of success on appeal." *Id.* (internal quotation marks omitted). The strength of the omitted issue guides our assessment of the ineffectiveness claim. "If the omitted issue is so plainly meritorious that it would have been unreasonable to winnow it out even from an otherwise strong appeal, its omission may directly establish deficient performance." *Id.* "[I]f the omitted issue has merit but is not so compelling, the case for deficient performance is more complicated, requiring an assessment of the issue relative to the rest of the appeal, and deferential consideration must be given to any professional judgment involved in its omission." *Id.* And "if the issue is meritless, its omission will not constitute deficient performance." *Id.*

*Turrentine*, 638 Fed.Appx. at 705 (quoting *Cargle*, 317 F.3d at 1202); *see also United States v. Challoner*, 583 F.3d 745, 749 (10th Cir. 2009) (defendant must demonstrate that appellate counsel decided to forego an issue that constituted a "dead bang winner" to establish deficient performance).

IV. <u>ARGUMENT</u>

      A. <u>Trial And Appellate Counsel Were Not Ineffective By Failing To Challenge The Wording In Count Three Of The Superseding Indictment</u>.

For his primary claim, the defendant argues that trial and appellate counsel were ineffective by failing to challenge "the jurisdictional defect involving the

indictment." (Doc. 817-1, Mem. in Supp. at 4-15.) Liberally construing the defendant's claim, he seems to suggest that Count Three of the Superseding Indictment provided insufficient notice of the charges against him because (1) the charge failed to identify the official federal proceeding that was impacted by Crystal Fisher's murder, and (2) the charge failed to identify the Federal law enforcement officer. (*Id.*)

Count Three of the Superseding Indictment reads in relevant part:

That on or about March 2, 2010, and up to and including March 3, 2010, in the District of Kansas, the defendants,

VIROK D. WEBB and
MARCUS D. ROBERSON,

did willfully, deliberately, maliciously, with premeditation and malice aforethought, kill one CRYSTAL K. FISHER, with the intent to prevent CRYSTAL K. FISHER from communicating to a law enforcement officer of the United States the facts and details of the commission and possible commission of federal offenses, namely the distribution of cocaine and cocaine base, commonly known as "powder cocaine" and "crack cocaine," respectively, and conspiracy to distribute cocaine and cocaine base, in violation of Title 21, United States Code, Sections 841(a)(1) and 846; all in violation of Title 18, United States Code, Section 1512(a)(1)(C) and Title 18, United States Code, Section 2.

(Doc. 50, Superseding Indictment at 3.)

The charge clearly informed the defendant that Fisher was murdered to prevent her from speaking with a federal law enforcement officer ("law enforcement officer of the United States") and that she was murdered to prevent her from

providing information about particular federal offenses, namely the distribution of crack and powder cocaine. Nevertheless, the defendant submits that the charge is fatally defective and that trial and appellate counsel were ineffective in failing to challenge this particular count in the indictment.

It is settled law that "[t]o satisfy the Fifth and Sixth Amendments, an indictment must contain the elements of the offense charged, fairly inform a defendant of the charge, and enable the defendant to plead double jeopardy as a defense in a future prosecution for the same offense; under this standard, it is generally sufficient that an indictment set forth the offense in the words of the statute itself, as long as those words of themselves fully, directly, and expressly, without any uncertainty or ambiguity, set forth all the elements necessary to constitute the offense intended to be punished." *United States v. Blankenship*, 846 F.3d 663, 668 (4th Cir. 2017) (internal citations omitted); *see also United States v. Wearing*, 837 F.3d 905, 910 (8th Cir. 2016) (indictment is sufficient if it tracks the statutory language); *United States v. Stevenson*, 832 F.3d 412, 424 (3d Cir. 2016) ("No greater specificity than the statutory language is required in an indictment so long as there is sufficient factual orientation to permit a defendant to prepare his defense and invoke double jeopardy; generally, an indictment will satisfy these requirements where it informs the defendant of the statute he is charged with violating, lists the elements of a violation under the statute, and specifies the time period during which

the violations occurred.") (internal citations omitted); *United States v. Laureano-Perez*, 797 F.3d 45, 60 (1st Cir. 2015) (An indictment is legally sufficient if it 'first, contains the elements of the offense charged and fairly informs a defendant of the charge against which he must defend, and, second, enables him to plead an acquittal or conviction in bar of future prosecutions for the same offense) (internal citations omitted).

As Tenth Circuit precedent holds:

"An indictment is sufficient if it sets forth the elements of the offense charged, puts the defendant on fair notice of the charges against which he must defend, and enables the defendant to assert a double jeopardy defense." *United States v. Redcorn*, 528 F.3d 727, 733 (10th Cir.2008) (quotations omitted). "It is generally sufficient that an indictment set forth the offense in the words of the statute itself, as long as those words of themselves fully, directly, and expressly, without any uncertainty or ambiguity, set forth all the elements necessary to constitute the [offense] intended to be punished." *Hamling v. United States*, 418 U.S. 87, 117, 94 S.Ct. 2887, 41 L.Ed.2d 590 (1974) (quotation omitted). "Therefore, where the indictment quotes the language of a statute and includes the date, place, and nature of illegal activity, it need not go further and allege in detail the factual proof that will be relied upon to support the charges." *Redcorn*, 528 F.3d at 733 (quotations omitted). "An indictment need only meet minimal constitutional standards[;] ... we determine the sufficiency of an indictment by practical rather than technical considerations." *United States v. Dashney*, 117 F.3d 1197, 1205 (10th Cir.1997).

*United States v. Powell*, 767 F.3d 1026, 1030 (10th Cir. 2014).

Here, Count Three of the Superseding Indictment was unquestionably pleaded in the language of the statute. It gave the defendant fair notice that Fisher was murdered to prevent her from speaking to a federal law enforcement official about a

particular federal offense, again, the distribution of powder and crack cocaine by the Webb drug trafficking organization of which the defendant held a significant position. Thus, the words set forth in the charge "fully, directly, and expressly, without any uncertainty or ambiguity, set forth all the elements necessary to constitute the [offense] intended to be punished." *Id*.

That Count Three of the Superseding Indictment did not specifically identify "an officer of the United States" as a special agent of the Drug Enforcement Administration does not cause the charge to run afoul of the Fifth and Sixth Amendment. Likewise, that Count Three of the Superseding Indictment failed to set forth in greater specificity the actual federal offense is similarly without concern given that the crime of drug distribution is well-understood as a federal offense, and Counts One and Two of the Superseding Indictment spelled out in sufficient detail the federal narcotics offenses in question. *United States v. Phillips*, 869 F.2d 1361, 1364 (10th Cir. 1988) (finding that courts, being governed by practical rather than technical considerations, read the indictment as a whole, construing it with common sense and in light of its basic purpose of informing the defendant of the pending charges). Under this rubric, the defendant cannot establish that Count Three of the Superseding Indictment was constitutionally infirm.

The defendant falls equally short of demonstrating that counsel were ineffective in failing to challenge the indictment at trial and on appeal. The

defendant certainly cannot overcome the prejudice prong in this circumstance given that he has failed to show that the government could not have withstood a challenge to Count Three by simply amending the indictment had trial counsel filed a motion to dismiss. *United States v. Rasco*, 697 F.Supp. 343, 345 (N.D. Ill. 1988). Moreover, had appellate counsel raised the issue on direct appeal, he could not have overcome the plain error standard given that, at bottom, any ambiguity in Count Three of the Superseding Indictment did not undermine the fairness of the defendant's trial. *United States v. Gonzalez-Huerta*, 403 F.3d 727, 732 (10th Cir. 2005) (applying the four prongs of the well-understood plain error review). This, of course assumes that there was error in the first place. There was not; and, appellate counsel's argument would have been a "dead bang loser" given that Count Three of the Superseding Indictment was properly pled as more fully described above.

The defendant cannot demonstrate that trial or appellate counsel's respective performances fell below an objective standard of reasonableness for failing to challenge the constitutionally sound language in Count Three of the Superseding Indictment. Accordingly, his arguments here must be rejected.

        B.    <u>Trial Counsel Was Not Ineffective In His Cross-Examination Of A Government Witness</u>.

For his second argument, the defendant suggests that government witness Antonio Cooper provided false testimony concerning his cooperation with the government and that trial counsel failed to adequately confront Cooper about his

cooperation with the United States. (Doc. 817-1, Mem. in Supp. at 15-24.) The defendant's arguments are substantively without merit and should be rejected. Arguably, the defendant's assertion is premised on a false assumption, namely that the government's recommendation of a 60-month sentence in Cooper's unrelated case was the equivalent of a substantial assistance reduction under U.S.S.G. § 5K1.1.

Prior to the defendant even being charged in this case, government witness Antonio Cooper entered a guilty plea to possession of a firearm in furtherance of a drug trafficking crime, in violation of 18 U.S.C. § 924(c)(1)(A)(i). *See United States v. Cooper*, 11-40034-01-JAR, Doc. 15, Plea Agreement **Sealed** at 8-18. As part of the government's agreements it recommended that Cooper be sentenced to a term of 60 months, the statutory mandatory minimum sentence for violating this particular statute. (*Id*. at 11, ¶ 5(c).) The plea agreement also contained a substantial assistance provision. (*Id*. at 13, ¶ 7.) Cooper had thus resolved his case with the United States through a plea agreement which set forth the contractual arrangement between the parties. To that end, Cooper's statement that he had not been promised a reduced sentence because of his testimony was an accurate answer and consistent with the terms of the plea agreement. (Doc. 608, Tr. Trans. at 117.)

Importantly, defense counsel received a copy of this agreement in advance of trial and was therefore aware of the government's recommendation that Cooper be sentenced to the mandatory minimum term of 60 months, and that a provision for

substantial assistance was included within the agreement. Given trial counsel's cross-examination of Cooper it is equally clear that counsel was not only aware of the underlying facts supporting Cooper's conviction, but of the plea agreement and Cooper's criminal history. (Doc. 608, Tr. Trans. at 711-716.)

Decisions by trial counsel on how to best cross-examine a witness presumptively arises from sound trial strategy. *Richie v. Mullin*, 417 F.3d 1117, 1124 (10th Cir. 2005); *DeLozier v. Sirmons*, 531 F.3d 1306, 1325 (10th Cir. 2008) (noting that the Court has repeatedly stated that counsel's decisions regarding how to best cross-examine witnesses presumptively arise from sound trial strategy).

Here, trial counsel effectively impeached Antonio Cooper. Unquestionably, beyond being confronted about his agreement with the United States, Cooper was attacked by defense counsel on multiple fronts. Counsel examined Cooper about his success as a drug dealer; that Cooper was exclusively a drug dealer and paid no taxes; that Cooper had an association with Crystal Fisher and that she posed a threat to him if she spoke to law enforcement; that Cooper had misled law enforcement during his arrest; that Cooper regularly smoked marijuana; that Cooper assisted Webb in procuring a firearm that was directly linked to the murder of Crystal Fisher; that Cooper only disclosed the existence of this firearm after his arrest and after questioning by law enforcement officers about Fisher's murder; that Cooper's statements to law enforcement appeared inconsistent, and finally that Cooper had an

incentive to provide evidence against the defendant. (Doc. 608, Tr. Trans. at 702-745.)

Cross examining Cooper about his agreement with the government was part of an overall strategy to impeach Cooper. However, the fact that trial counsel chose to center his attack on more substantive issues, rather than focusing on Cooper's understanding of his substantial assistance, was a strategy that was arguably far more effective. Certainly, such a strategy is not one that can be second-guessed under the circumstances, nor provide reason to find that trial counsel's performance in cross-examining Cooper fell below an objective standard of reasonableness.

This Court must indulge a strong presumption that trial counsel's conduct fell within the wide range of reasonable professional assistance. *Strickland*, 466 U.S. at 689. To that end, particular decisions on how to cross-examine a witness, cooperating or otherwise, fall within the four-corners of trial strategy, and unless the defendant can establish that counsel neglected his responsibility in exercising that discretion, this Court must avoid second-guessing the manner in which trial counsel cross-examined a particular witness. *Id*.

Moreover, the defendant, per *Strickland*, must demonstrate that there is a reasonable probability that, but for trial counsel's error in not better cross-examining Cooper about his agreement with the United States, the result of the trial would have been different, such that it undermined the confidence in the outcome of the trial.

*Id*. at 694.   However, the situation here does not present itself as one where trial counsel completely abdicated his responsibility in cross-examining a government witness.   Again, counsel effectively cross-examined Cooper and presented to the jury that Cooper had something to gain by his testimony, directing his line of inquiry such that the jury understood that Cooper could be rewarded for testifying against the defendant.   (Doc. 608, Tr. Trans. at 175.)[3]

Trial counsel's decision on how best to cross-examine Cooper was pure trial strategy.   There is nothing within the defendant's argument that should cause this Court to second-guess that strategy.   Consequently, the defendant cannot establish that trial counsel's actions were objectively unreasonable, or that counsel's alleged error was such that the result of the trial would have been different had he cross-examined Cooper in a manner described within the defendant's motion.

For the foregoing reasons, the defendant's arguments on this ground must be denied.

---

[3]   This is reflected by the following:

Defense Counsel:  Well, you are expecting a reduction, right?

Cooper:  I hope for one, yeah.

Defense Counsel:  Because otherwise what would be the point of your testifying?  Would there be?

Cooper: No.

C.    Trial Counsel Was Not Ineffective In Failing To Submit Affidavits Purportedly Written By Co-Defendant Virok Webb.

For his third claim, the defendant argues that trial counsel (Both Lowry and Rogers) were ineffective by failing to submit two affidavits purportedly written by co-defendant Virok Webb in further support of the motion filed pursuant to Fed.R.Crim.P. 33.[4] (Doc. 817-1, Mem. in Supp. at 24-29.) The defendant maintains that these "affidavits would have proven that there was no conspiracy agreement between [the defendant] and Virok Webb's drug distribution organization." (*Id*. at 24.)[5]

The defendant's argument is heavily misguided, because merely submitting these extraordinarily self-serving affidavits—supposedly authored by Webb—in a Rule 33 motion would not in-and-of-themselves demonstrate newly discovered evidence. Thus, standing alone, the affidavits provide absolutely no relief to the

---

[4]    Following the trial, the defendant, through counsel, filed a motion for new trial under Fed.R.Crim.P. 33(a) on grounds of newly discovered evidence, namely information related to government witness Antonio Cooper concerning a statement he provided to law enforcement officers many years earlier in an unrelated homicide investigation. (Doc. 675, Def. Mot. for New Trial at 1-7.)

[5]    It should be noted here that co-defendant Kennin Dewberry has made virtually the exact same assertion, i.e., that trial counsel erred in failing to call Virok Webb to the stand to testify that Dewberry, like the defendant, was not involved in the drug conspiracy. (Doc. 779, Def. Mot. to Vacate at 10-13.) The fact that Webb provided affidavits both to Dewberry and the defendant should cause this Court some pause, given that these affidavits are, at their very best, specious and contrived. To be sure, the defendant did not provide similar affidavits to any other co-defendant, to include three co-defendants (Chism, Jackson, and Johnson) who were the mothers of his children; arguably shedding further light on Webb's insincere attempts to clear both the defendant and Dewberry—the only two within the conspiracy who did not cooperate with the Government against Webb.

defendant. At most, the affidavits suggest that Webb would have been willing to testify that the defendant was not involved in the drug trafficking organization. (Doc. 817-1, Mem. in Supp. at 25-26.) Yet, only under circumstances where Webb's statements were subject to cross-examination would the defendant be able to utilize the affidavits.

It is well-settled that "the decision of which witnesses to call is quintessentially a matter of strategy." *United States v. McGehee*, 307 Fed.Appx. 145, 148 (10th Cir. 2009) (unpublished) (quoting *Boyle v. McKune*, 544 F.3d 1132, 1139 (10th Cir. 2008)). Yet, here, the defendant's counsel was undoubtedly prevented from even interviewing Webb—much less calling him to testify—given that Webb was represented by counsel.

Indeed, a decision against placing Webb on the witness stand to provide a spurious and self-serving statement that the defendant had no involvement in the drug conspiracy would undoubtedly have been the correct decision on trial counsel's part. Subjecting Webb to cross-examination would have resulted in the government's ability to put before the jury Webb's statement to Detective Josh Brown wherein he (Webb) brags at length about his high ranking position in the crack cocaine distribution ring within Junction City and how he controlled the flow of drugs in the community. Given the enormous amount of evidence arrayed against

Webb, as well as the defendant, trial counsel was right to avoid having Webb testify in the defendant's case.

The defendant cannot demonstrate that trial counsel's decision was objectively unreasonable. To the contrary, had counsel put Webb on the stand, the defendant would likely have a very valid claim today that trial counsel was ineffective for engaging in such a tactic.

Practically, however, the defendant's argument is foreclosed by the fact that trial counsel would have violated the Kansas Rules of Professional Conduct had he attempted to speak with Webb or subpoenaed him for the trial.[6] In short, Webb was represented by counsel, and defendant's counsel had to go through Webb's counsel regarding any attempt to have Webb either interviewed or testify.

The affidavits that the defendant submits provide him no relief except under the circumstances where Webb would be subject to cross-examination. As explained above, counsel could not be deemed ineffective in foregoing the opportunity to place Webb on the stand to testify. Such a tactic would have only compounded the

---

[6] See Rule 226, Kansas Rules of Professional Conduct, 4.2 Transactions with Persons other than Clients: Communication with Person Represented by Counsel. In representing a client, a lawyer shall not communicate about the subject of the representation with a person the lawyer knows to be represented by another lawyer in the matter, unless the lawyer has the consent of the other lawyer or is authorized to do so by law or a court order.

overwhelming evidence arrayed against the defendant demonstrating his extensive role within the Webb drug trafficking organization.

Because the defendant cannot establish that counsel acted in an objectively unreasonable manner, he fails to sustain any argument under *Strickland* which would provide relief.

### D.   Trial Counsel Was Not Ineffective For Failing To Object To The Statement Of A Trial Witness.

For his fourth claim, the defendant maintains that trial counsel was ineffective for failing to object to the testimony of government witness Raschon Smith.  (Doc. 817-1, Mem. in Supp. at 29-34.)   In particular, the defendant argues that Smith's statement that the defendant confessed to the murder of Crystal Fisher ran afoul of Fed. R. Evid. 801(d)(2)(E), and that trial counsel erred in not objecting to the statement.  (*Id.*)

During the trial of this matter the government called Raschon Smith to testify during its case-in-chief.   (Doc. 609, Tr. Trans. at 1048-1074.)   Smith testified to various incriminating statements made by both the defendant and Virok Webb.  (*Id.*) In particular, however, Smith testified that the defendant confessed to him, while they were incarcerated together, that he (the defendant) had murdered Fisher because she was going to testify against him and others in the drug trafficking organization. (*Id.* at 159.)  It is this statement that the defendant takes issue with, and argues that trial counsel should have objected on grounds that it did not meet the exception under

Fed.R.Evid. 801(d)(2)(E). (Doc. 817-1, Memo. in Supp. at 31 ("The statements were offered during coconspirator Raschon Smith being incarcerated.); at 32 ("Because the statement was made while coconspirator was incarcerated determined that there was no conspiracy."); at 33 ("The [defendant] argues that this statement violated Rule 801(d)(2)(E).")

The defendant's arguments here can easily be dismissed because the defendant's statement to Smith about murdering Crystal Fisher was not submitted under 801(d)(2)(E), but rather was a statement admissible under Fed.R.Evid. 804(b)(3)(A), namely a statement against interest. Thus, an objection by trial counsel pursuant to 801(d)(2)(E) would have made little sense given that Smith was testifying about a statement made by the defendant that fell squarely within 804(b)(3)(A). Similarly, an objection to Smith's testimony that it did not meet the exception under 804(b)(3)(A) would have been rejected given the amount of "corroborating circumstances" that supported the trustworthiness of the defendant's statement. Fed.R.Evid. 804(b)(3)(B); *United States v. Tolliver*, 730 F.3d 1216, 1228 n.3 (10th Cir. 2013) ("Under this rule, hearsay can be admitted for its truth if: (1) the declarant is considered to be unavailable to testify, for example, because of privilege, refusal to testify, or failure of memory, Fed.R.Evid. 804(a); (2) the statement was so contrary to the declarant's interest that a reasonable person would only make it if he

believed it to be true, Fed.R.Evid. 804(b)(3)(A); and (3) corroborating circumstances clearly support the statement's trustworthiness, Fed.R.Evid. 804(b)(3)(B).").

The defendant's argument on this ground is misplaced. And, even under the proper argument, the defendant's claim would still fall short of establishing that counsel's actions were unreasonable under *Strickland*.

E.    Trial Counsel Was Not Ineffective In Failing To Subpoena Cell Phone Records.

For his fifth claim, the defendant argues that trial counsel was ineffective for failing to subpoena his (the defendant's) cell phone records, as well as the cell phone records of co-defendant's Alisha Escobedo and Jamaica Chism, as well as the cell phone records of Esther Roberson. (Doc. 817-1, Mem. in Supp. at 34-47) ("In sum, [defendant] argues that, this argument alone does not conclude that [defendant] is factually innocent of the counts of conviction. Instead, the [defendant] argues that counsel was ineffective under *Strickland* by, (1) failing to obtain GPS tracking locations and of the telephone records, that provided the [defendant] with the ability to argue to the jury that he was not in possession of the cell phones, nor was he in the area of the homicide scene when the shooting occurred or where the murder weapon was disposed of."). The defendant's claim that these records would have supported an alibi defense is speculative at best and unquestionably self-serving. Accordingly, his arguments must be denied.

First, it must be noted that the claim that trial counsel was ineffective for failing to subpoena the defendant's cell phone records is patently frivolous. Trial counsel already had the defendant's cell phone records. Without question, the government provided in the discovery materials the records of both phones associated with the defendant during the time of the homicide. Trial counsel cannot be considered ineffective for failing to subpoena records he already had in his possession.

As to the argument that trial counsel was ineffective for failing to obtain the cell phone records of Alisha Escobedo, Jamaica Chism and Esther Roberson, the defendant fails to establish exactly what these records would have shown as opposed to what each of these witnesses testified to at trial. Thus, the allegation that the cell phone records might have contradicted each of the witnesses statements is wholly insufficient to sustain a claim under *Strickland*.[7] *Cummings v. Sirmons*, 506 F.3d

---

[7] In the case of *Jackson v. United States*, No. 1:06-cr-00134-AWI, 2012 WL 2953058 (E.D. Cal. July 19, 2012) (unpublished), the Court there disposed of a similar argument as follows:

> Failure to obtain cell phone records—Petitioner further contends trial counsel was ineffective for failing "to obtain cell phone records after stating he would get records to show where calls were made from on day and time of robbery." The Court does not agree. Even assuming counsel's failure to obtain the records somehow constituted deficient representation, Petitioner has provided no argument or evidence to suggest the records would have been exculpatory. Petitioner presumably intends to suggest the records would have established an alibi by showing calls were placed at locations away from the robberies while the robberies were being committed. Problematically for Petitioner, the records would more than likely have revealed only the numbers that were called and the date and duration of the calls themselves. Although the location of the caller could conceivably have been determined through triangulation, the records would not have revealed the

1211, 1228-29, 33-34 (10th Cir. 2007) (assertions based only on unsubstantiated facts are insufficient to satisfy *Strickland*). Breaking down the defendant's claim, he pushes this Court to believe that Escobedo, Chism and Esther Roberson all lied in their testimony to the jury, and that the cell phone records—had counsel subpoenaed them—would somehow corroborate this completely unfounded assertion. Again, this argument is insufficient to sustain a claim under *Strickland*; and, it is not reasonably likely that the result of the trial would have been different under the circumstances had counsel in fact subpoenaed the phone records. As noted in *Harrington v. Richter*, 562 U.S. 86 (2011):

> In assessing prejudice under *Strickland*, the question is not whether a court can be certain counsel's performance had no effect on the outcome or whether it is possible a reasonable doubt might have been established if counsel acted differently. See *Wong v. Belmontes*, 558 U.S. 15, 27, 130 S.Ct. 383, 390, 175 L.Ed.2d 328 (2009) (per curiam) (slip op., at 13); *Strickland*, 466 U.S., at 693, 104 S.Ct. 2052. Instead, *Strickland* asks whether it is "reasonably likely" the result would have been different. *Id*., at 696, 104 S.Ct. 2052. This does not require a showing that counsel's actions "more likely than not altered the outcome," but the difference between *Strickland's* prejudice standard and a more-probable-than-not standard is slight and matters "only in the rarest case." *Id*., at 693, 697, 104 S.Ct. 2052. <u>The likelihood of a different result must be substantial, not just conceivable</u>. Id., at 693, 104 S.Ct. 2052.

---

identity of the person who actually used the phone; at most the records might have shown a cell phone registered to Petitioner was in use in another location during the commission of the robberies. However, a cell phone does not always follows its subscriber. It can also be used by third parties. That is to say, Petitioner could have committed the crimes at the same time someone else was using his phone.

2016 WL 2953058, at *6.

*Id.* at 111-12 (emphasis supplied).

To be sure, the cell phone testimony in the trial of this matter was significant and conclusively supported the government's charge that the defendant murdered Crystal Fisher.  (Doc. 611, Tr. Trans. at 1312-1425 (DEA Special Agent Anthony Archer).)  To that same end, Alisha Escobedo, Jamaica Chism, and Esther Roberson all testified as to their respective association with the defendant just before and just after he murdered Crystal Fisher.  (Doc. 608, Tr. Trans. at 791-857 (Escobedo); Docs. 608 & 608, Tr. Trans. at 858-944 (Chism); Doc. 609, Tr. Trans. at 952-1006 (E. Roberson).)  The testimony of these three co-defendants was consistent and overwhelming.

The defendant has failed to establish "a reasonable probability that but for counsel's unprofessional errors, the result of the proceeding would have been different."  *Strickland*, 466 U.S. at 694.[8]

---

[8]  The defendant appears to supplement his argument within this particular ground by submitting that an evidentiary hearing is necessary to explore counsel's failure to obtain particular items of evidence, namely (1) a DEA report, (2) employment records, (3) a police interview of an informant, (4) phone records of an individual associated with the witness Jermaine Jackson, and (5) the defendant's mental health records.  (Doc. 817-1, Mem. in Supp. at 45-47.)  These particular claims are similarly speculative and fail to provide any meaningful information which would satisfy the *Strickland* standard.  For the reasons cited above, these particular claims must also be rejected.

.

Here, the defendant argues that trial counsel[9] failed to adequately challenge the amount of narcotics attributed to him.  His argument fails to satisfy the *Strickland* standard and relief must be denied.

In anticipation of sentencing a presentence investigation report ("PSIR") was drafted for the Court's consideration using the 2013 Guidelines Manual.  (Doc. 735, PSIR at 19, ¶ 71.)  Counts 1 and 2 were grouped for Guideline calculation purposes and resulted in a base offense level of 34 given that 16,901.46 kilograms of marijuana were attributed to the defendant using the drug equivalency formula.  (*Id.* at 19, ¶¶ 72-73.)   With respect to the actual narcotics alleged in Counts One and Two, the PSIR calculated that 4141.54 grams of crack cocaine and 9,922.33 grams of powder cocaine were attributable to the defendant.  (*Id.* at 11, ¶ 40.)  Importantly, however, because the base offense level of 43 for Count Three was the greater of the adjusted offense level for Counts One and Two, the PSIR applied the base offense level for Count Three to calculate the overall sentence.  (*Id.* at 19-20, ¶¶ 79-91.)

---

[9]   Between the guilt and sentencing phases Forrest Lowry was allowed to withdraw as counsel. (Doc. 564, Order at 1.)  Charles M. Rogers, who had earlier represented the defendant alongside Lowry, was assigned again to represent the defendant.  (*Id.*)  Shortly thereafter, however, Rogers was allowed to withdraw and J.R. Hobbs was ultimately assigned to represent the defendant.  (Doc. 678, Order at 1.)  In this particular argument, the defendant alleges that Hobbs was ineffective in failing to challenge the amount of narcotics attributable to him (the defendant).  (Doc. 817-1, Mem. in Supp. at 47-48.)

Prior to sentencing the defendant, through counsel, filed a sentencing memorandum challenging the amount of narcotics attributed to him. (Doc. 733, Def. Sent. Memo. at 7-9.) This specific pleading largely contradicts the argument the defendant submits in this particular ground. In short, the amount of narcotics attributed to the defendant was challenged, contrary to what the defendant would have this Court believe.

Nevertheless, the government proved beyond a reasonable doubt that the defendant conspired to distribute 280 grams or more of crack cocaine, and 5 kilograms or more of powder cocaine. (Doc. 525, Special Verdict at 2 (crack cocaine); at 3 (powder cocaine).) Therefore, the government established the statutory minimum threshold amounts to warrant a sentence under 21 U.S.C. § 841(b)(1)(A), and the Guidelines calculation supported that finding given the defendant's substantial role in the conspiracy. Coupled with the Information filed pursuant to 21 U.S.C. § 851, the defendant was subject to a statutory (non-Guideline) sentence of Life.

Simply put, the defendant cannot establish prejudice under these circumstances because he was not sentenced under the Guidelines, but rather received a mandatory life sentence under § 841(b)(1)(A). *United States v. Goodwin*, 541 Fed.Appx. 851, 853 (10th Cir. 2013) (unpublished) ("Defense counsel's failure to object to the use of crack cocaine in determining defendant's base offense level

under the guidelines for defendant's cocaine conspiracy conviction did not prejudice defendant, and thus did not constitute ineffective assistance, where defendant was not sentenced under the guidelines, but rather received the statutory mandatory minimum sentence.")

Similarly, the defendant cannot establish prejudice in this instance for the very reason that he was sentenced to a term of Life on Count Three. (Doc. 737, Judgment at 2.) Thus, even if the defendant could sustain an argument that trial counsel's failure to challenge the drug calculations fell below an objective standard of reasonableness, this failure in no way impacted the defendant's overall statutory life sentence.

Trial counsel did in fact challenge the amount of narcotics attributed to the defendant. That counsel may have presented an argument different than the one submitted by the defendant in the present motion is, in the end, simply immaterial as the defendant was sentenced under § 841(b)(1)(A) rather than the Guidelines. The defendant's argument falls equally short of establishing prejudice for the obvious reason that he was sentenced to a term of Life for a mutually exclusive offense, namely murder. Consequently, his arguments on this ground must be rejected.

### G. Trial Counsel Was Not Ineffective By Allegedly (1) Failing To Inform The Defendant Of The Information Filed Pursuant To 21 U.S.C. § 851, And (2) Failing To Object To The Prior Convictions Used To Support The Information.

For his seventh ground, the defendant alleges that trial counsel failed to inform him that the Government filed an Information, pursuant to 21 U.S.C. § 851, seeking to increase the defendant's punishment by reason of two prior convictions for controlled substance offenses. (Doc. 817-1, Mem. in Supp. at 50-53.) The defendant further argues that trial counsel was ineffective for not challenging the prior convictions used to support the government's information. (*Id.*) The defendant's arguments on this ground fail to satisfy the *Strickland* standard.

Four days after the original indictment was filed the government submitted an Information pursuant to 21 U.S.C. § 851(a)(1)[10] seeking to increase the defendant's

---

[10]   21 U.S.C. § 851 reads as follows:

(a) Information filed by United States Attorney

(1) No person who stands convicted of an offense under this part shall be sentenced to increased punishment by reason of one or more prior convictions, unless before trial, or before entry of a plea of guilty, the United States attorney files an information with the court (and serves a copy of such information on the person or counsel for the person) stating in writing the previous convictions to be relied upon. Upon a showing by the United States attorney that facts regarding prior convictions could not with due diligence be obtained prior to trial or before entry of a plea of guilty, the court may postpone the trial or the taking of the plea of guilty for a reasonable period for the purpose of obtaining such facts. Clerical mistakes in the information may be amended at any time prior to the pronouncement of sentence.

(2) An information may not be filed under this section if the increased punishment which may be imposed is imprisonment for a term in excess of three years unless the person either waived or was afforded prosecution by indictment for the offense for which such increased punishment may be imposed.

(b) Affirmation or denial of previous conviction

If the United States attorney files an information under this section, the court shall after conviction but before pronouncement of sentence inquire of the person with respect to whom the information was filed whether he affirms or denies that he has been previously convicted as alleged in the information, and shall inform him that any challenge to a prior conviction which is not made before sentence is imposed may not thereafter be raised to attack the sentence.

(c) Denial; written response; hearing

(1) If the person denies any allegation of the information of prior conviction, or claims that any conviction alleged is invalid, he shall file a written response to the information. A copy of the response shall be served upon the United States attorney. The court shall hold a hearing to determine any issues raised by the response which would except the person from increased punishment. The failure of the United States attorney to include in the information the complete criminal record of the person or any facts in addition to the convictions to be relied upon shall not constitute grounds for invalidating the notice given in the information required by subsection (a)(1) of this section. The hearing shall be before the court without a jury and either party may introduce evidence. Except as otherwise provided in paragraph (2) of this subsection, the United States attorney shall have the burden of proof beyond a reasonable doubt on any issue of fact. At the request of either party, the court shall enter findings of fact and conclusions of law.

(2) A person claiming that a conviction alleged in the information was obtained in violation of the Constitution of the United States shall set forth his claim, and the factual basis therefor, with particularity in his response to the information. The person shall have the burden of proof by a preponderance of the evidence on any issue of fact raised by the response. Any challenge to a prior conviction, not raised by response to the information before an increased sentence is imposed in reliance thereon, shall be waived unless good cause be shown for failure to make a timely challenge.

(d) Imposition of sentence

(1) If the person files no response to the information, or if the court determines, after hearing, that the person is subject to increased punishment by reason of prior convictions, the court shall proceed to impose sentence upon him as provided by this part.

(2) If the court determines that the person has not been convicted as alleged in the information, that a conviction alleged in the information is invalid, or that the person is otherwise not subject to an increased sentence as a matter of law, the court shall, at the request of the United States attorney, postpone sentence to allow an

potential punishment to a term of life imprisonment without release were he to be convicted of the charged controlled substance offenses. (Doc. 13, Information at 1-3; Filed on 8/28/2011.) Prior to the charges being filed in the instant case, the defendant had been twice convicted of a qualifying controlled substance offense, namely conspiracy to distribute powder and crack cocaine, and possession of cocaine. (*Id*. at 2.)

The defendant maintains that trial counsel failed to inform him that the government filed the Information in question, and further failed to investigate the prior convictions. (Doc. 817-1, Mem. in Supp. at 52.) ("[Defendant] asserts that he was denied effective assistance of counsel because his trial attorney failed to inform him the U.S. Attorney's Office had filed an Information Complaint, pursuant to 21 U.S.C. 851, against him, and failed to investigate whether his prior convictions-offered for enhancement under 21 U.S.C. 851 actually qualified under the statute.")

---

appeal from that determination. If no such request is made, the court shall impose sentence as provided by this part. The person may appeal from an order postponing sentence as if sentence had been pronounced and a final judgment of conviction entered.

(e) Statute of limitations

No person who stands convicted of an offense under this part may challenge the validity of any prior conviction alleged under this section which occurred more than five years before the date of the information alleging such prior conviction.

Here, there is no dispute that the government filed the Information almost immediately after the original indictment was filed.[11] The government further submits that, pursuant to the statute, a copy of the pleading was hand-delivered to trial counsel at arraignment.[12] This would have been the traditional approach to ensure the defendant was immediately aware that the government intended to seek the most severe punishment possible. To be sure, during the arraignment proceedings, the defendant was fully informed that the maximum punishment he faced was a term of life without release given that he was subject to a sentence under 21 U.S.C. § 841(b)(1)(A). (Doc. 23, Arra'm't Min. at 1.) Simply put, there is no doubt that trial counsel was aware, very early on in the proceedings, of the government's intent to seek an enhanced punishment.

Nevertheless, the defendant alleges that trial counsel did not inform him that the Information had been filed. The defendant's assertion is a broad, conclusory allegation unsupported by any evidence or specific facts which lend support to the claim. And, it is well-settled that a bare complaint such as this falls remarkably short of meeting the *Strickland* standard. *See Stafford v. Saffle*, 34 F.3d 1557, 1564-65 (10th Cir. 1994) (noting that vague and conclusory evidence is insufficient to satisfy

---

[11] The original indictment was filed on August 24, 2011. (Doc. 1, Indictment at 1-2.) The Information was filed on August 28, 2011. (Doc. 13, Information at 1-3.) The defendant was arraigned on August 30, 2011. (Doc. 23, Arra'm't Min. at 1.)

[12] The certificate of service confirms that the government also electronically filed the Information which delivered an electronic copy to trial counsel. (Doc. 13, Information at 3.)

*Strickland's* prejudice prong); *Hall v. Bellmon*, 935 F.2d 1106, 1110 (10th Cir. 1991) (holding that pro se defendants must still allege sufficient facts on which a recognized legal claim can be based and that conclusory allegations will not suffice); *Cummings v. Sirmons*, 506 F.3d 1211, 1233-34 (10th Cir. 2007) (conclusory allegations are insufficient to satisfy *Strickland*).

Additionally, the defendant fails to establish exactly what grounds would have been available to trial counsel if a challenge to the two prior convictions was viable. Both convictions were well-established, with sufficient record support to demonstrate the qualified status of each prior offense. To be sure, one of the prior convictions was a federal narcotics offense to which the defendant entered a guilty plea before this very Court. *See United States v. Roberson*, 5:06cr40066-01-JAR; Doc. 23, Plea Pet. and Agreement at 1-17. It should also be noted that the defendant was represented in the prior federal case by the very same trial attorney who represented the defendant in the present prosecution. Thus, trial counsel would have been fully aware of the qualifying nature of this conviction. The state conviction was equally well-established and provided no reason to submit a challenge to its validity.[13]

---

[13] While the defendant argues that trial counsel failed to challenge the Information, the record conclusively demonstrates that counsel did in fact challenge the Information, but on grounds other than what the defendant submits should have been the reason for the challenge. (Doc. 733, Def. Sent. Memo. at 3-6) (arguing that prior convictions used to support a § 851 Information must be presented to a jury and proven beyond a reasonable doubt).

Finally, even if the defendant could somehow establish that trial counsel's actions in not investigating the prior offenses fell below an objective standard of reasonableness, he still fails to satisfy the prejudice prong for the simple reason that he was sentenced to a term of life without parole on the more serious offense of murder. (Doc. 737, Judgment at 2.)

In sum, the defendant's allegations on this particular ground are far too conclusory to warrant relief. Further, he cannot satisfy both prongs of the *Strickland* standard; and, thus, his claim here must be rejected.

H. <u>Trial Counsel Was Not Ineffective For Failing To Obtain Newly Discovered Evidence</u>.

For his eighth and final claim, the defendant appears to suggest that trial counsel failed to obtain a DEA report, (Doc. 817-1 at 66), after trial, which would have in turn provided sufficient reason for this Court to order a new trial under Fed.R.Crim.P. 33(b)(1). (Doc. 817-1, Mem. in Supp. at 53-54.) The defendant's argument lacks any merit.

First, the defendant's entire argument is premised on the belief that the document in question is in fact "newly discovered evidence." Such is not the case. This particular document, along with several other related DEA documents, were turned over in discovery to all defense counsel, to include both of defendant's counsel (Charlie Rogers and Forrest Lowry), on July 19, 2012 at 12:13 p.m. via

email.  Consequently, the material was neither "new," nor does the defendant's allegation of a *Brady* violation carry any weight under these circumstances.

Second, the information the defendant alludes to was addressed in part during the examination of DEA Special Agent John Shannon.  (Doc. 610, Trial Tr. at 1245-1252.)  The defendant, however, conflates the relevance of these DEA documents with what the government was required to prove in support of the conspiracy charge.  Here, the defendant submits that because the DEA had originally closed the investigation into the Webb drug trafficking organization this somehow established that there was insufficient evidence to convict him of conspiring with others to distribute crack and powder cocaine.  (Doc. 817-1, Mem. in Supp. at 54) ("Because the investigation and / or all investigative leads in the investigation of Marcus Roberson have been exhausted.  And the investigation report clearly establish that no further leads were expected.  Concerning Marcus Roberson that have been no arrests and no evidence, leading connecting him to no conspiracy concerning his alleged codefendants.  Neither were there any drugs nor none non-drugs collected during this investigation.  As a result, the investigation against Marcus Roberson was consider closed.")  This argument is meritless.  The fact that the DEA originally failed to get an in-road to the Webb trafficking organization does not translate into the defendant being completely absolved of his well-established culpability as a leader within the organization.

The evidence the defendant complains of was not "new." The evidence the defendant complains of had no material bearing on his role in the Webb drug trafficking organization, nor did the information exculpate him from the crimes with which he was charged. Thus, trial counsel cannot be deemed to have acted unreasonably such that the *Strickland* standard is satisfied in this instance.

For the reasons stated above, the defendant's arguments on this final ground must be rejected.

## V.     CONCLUSION

For the foregoing reasons, the defendant's motion to vacate his sentence must be overruled and all relief denied.

Respectfully submitted,

THOMAS E. BEALL
United States Attorney
District of Kansas

By:     /s/ *Jared S. Maag*

JARED S. MAAG, KS Bar No. 17222
Assistant United States Attorney
District of Kansas
290 Carlson Federal Building
444 SE Quincy Street
Topeka, KS 66683
Ph: 785.295.2850 (Office)
Fax: 785.295.2853
jared.maag@usdoj.gov

## CERTIFICATE OF SERVICE

I hereby certify that on this 21st day of September, 2017, I electronically filed the foregoing Response with the Clerk of the Court by using the CM/ECF system, and that a copy of the same was mailed through the USPS, first class, postage prepaid to:

Marcus Roberson
Reg. No. 15124-031
USP Lee
U.S. PENITENTIARY
P.O. BOX 305
JONESVILLE, VA  24263

By:     /s/ *Jared S. Maag*

JARED S. MAAG, Ks. Bar. No. 17222
Assistant United States Attorney