IN THE UNITED STATES DISTRICT COURT
FOR THE DISTRICT OF KANSAS

UNITED STATES OF AMERICA,

    Plaintiff,

    v.

MARCUS ROBERSON,

    Defendant.

Case No. 11-40078-JAR-02

**MEMORANDUM AND ORDER**

This matter comes before the Court on *pro se* Defendant Marcus Roberson's Motion for Compassionate Release (Doc. 915) under 18 U.S.C. § 3582(c)(1)(A) and the First Step Act,[1] and his Motion for Appointment of Counsel (Doc. 916). The Government filed a response and Roberson filed a reply. As explained more fully below, the Court denies the motion for compassionate release but reduces the sentence imposed on Count 2 to a term of 120 months, to run concurrently with the sentenced imposed on Counts 1 and 3. Roberson's motion to appoint counsel is denied.

**I.  Background**

On August 24, 2011, Roberson and four codefendants were charged in a one-count Indictment with conspiracy to distribute crack cocaine.[2] On August 28, 2011, the Government filed an Information to Establish Prior Conviction pursuant to 21 U.S.C. § 851.[3] On October 19, 2011, the Grand Jury returned a Superseding Indictment charging Roberson and seven

---

[1] Because Roberson appears *pro se*, the Court construes his pleadings liberally and holds them "to a less stringent standard than formal pleadings drafted by lawyers." *Hall v. Bellmon*, 935 F.2d 1106, 1110 (10th Cir. 1991). But the Court will not act as his advocate. *Id.*

[2] Doc. 1

[3] Doc. 13.

codefendants with conspiracy to distribute 280 grams or more of crack cocaine (Count 1) and conspiracy to distribute 5 kilograms or more of powder cocaine (Count 2), both in violation of 21 U.S.C. § 846. The Grand Jury also charged Roberson and codefendant Virok Webb with murder to prevent a person from providing information concerning a federal crime to a federal law enforcement officer (Count 3), in violation of 18 U.S.C. § 1512(a)(1)(C).[4]

Roberson proceeded to trial, with all but one of the other codefendants entering into plea agreements with the Government.[5] On March 6, 2014, the jury convicted Roberson on all three counts.[6] The jury also returned special verdicts determining that Roberson conspired to distribute 280 grams or more of crack cocaine and five kilograms or more of powder cocaine.[7]

On December 2, 2015, this Court sentenced Roberson to life imprisonment on Counts 1, 2 and 3, with these life sentences running concurrently.[8] The Presentence Report grouped Counts 1 and 2, the two drug counts, and scored the base offense level at 34 based on the conspirators' distribution of a total of 4,141.54 grams, or 4.14 kilograms, of crack cocaine and 10,560.19 grams, or 10.56 kilograms of powder cocaine.[9] Three levels were added for Roberson's role in the offense for a total offense level of 37 on Counts 1 and 2. The murder charge in Count 3 was scored at a base offense level of 43; there were no adjustments such that the total offense level for Count 3 was 43. Then, the grouping rules dictated adding one level to the murder charge's total offense level for a total offense level on all charges of 44. However,

---

[4] Doc. 50.

[5] On July 25, 2013, codefendant Kennin Dewberry was convicted by a jury of conspiracy to distribute crack and powder cocaine. Doc. 388.

[6] Doc. 525.

[7] *Id.*

[8] Doc. 737.

[9] Doc. 735 at 11, 19.

that was reduced back to a total offense level of 43, since the maximum offense level in the Sentencing Guidelines is 43.[10] Roberson's criminal history points totaled 14, and two levels were added because he committed the offense while he was on supervised release for a prior federal drug sentence.[11] With a criminal history score of 16, his Criminal History Category was VI.[12] The resulting guideline sentence, based on a total offense level of 43 and a Criminal History Category of VI, was a sentence of life imprisonment.

On November 16, 2016, the Tenth Circuit Court of Appeals affirmed Roberson's convictions and sentence.[13] On August 28, 2018, this Court issued a Memorandum and Order denying Roberson's motion for post-conviction relief filed pursuant to 28 U.S.C. § 2255 and denying a certificate of appealability.[14]

On February 1, 2024, this Court issued a Memorandum and Order denying Roberson's first motion for compassionate relief because he had failed to exhaust administrative remedies.[15] Roberson subsequently filed the instant motion for compassionate release.

Roberson is currently incarcerated at Coleman USP with no release date given his sentence of life imprisonment.

## II.    Legal Standard

"'Federal courts are forbidden, as a general matter, to modify a term of imprisonment once it has been imposed, but th[at] rule of finality is subject to a few narrow exceptions.' One

---

[10] *Id.* at 19–20.

[11] *Id.* at 27. Roberson was on supervised release after serving his 60-month sentence in Case No. 5:06CR40066-001 in the District of Kansas.

[12] *Id.* Even without this two-point increase in criminal history points, Roberson's Criminal History Category would still be VI, for that category is for criminal history points of 13 or more.

[13] *United States v. Roberson*, 664 F. App'x 743 (10th Cir. 2016).

[14] Doc. 850.

[15] Doc. 900.

3

such exception is contained in § 3582(c)(1)."[16] Section 3582(c)(1)(A), as amended by the First Step Act of 2018,[17] permits a court to reduce a term of imprisonment "upon motion of the defendant after the defendant has fully exhausted all administrative rights to appeal a failure of the [Bureau of Prisons] to bring a motion on the defendant's behalf or the lapse of 30 days from the receipt of such a request by the warden of the defendant's facility, whichever is earlier." Before reducing a term of imprisonment, a court must find that (1) "extraordinary and compelling reasons warrant" a sentence reduction, (2) such a reduction "is consistent with applicable policy statements issued by the Sentencing Commission," and (3) the applicable sentencing factors set forth in 18 U.S.C. § 3553(a) support such a reduction.[18] The court may deny a § 3582(c)(1)(A) motion "when any of the three prerequisites listed in § 3582(c)(1)(A) is lacking and do[es] not need to address the others."[19] If the court grants the motion, however, it must address all three steps.[20]

### III.   Discussion

#### A.   Exhaustion

Exhaustion under § 3582(c)(1)(A) is a mandatory claim-processing rule that the Court must enforce when the Government invokes it.[21] Here, the Government concedes that Roberson has properly exhausted his claim. The Court thus proceeds to the merits.

---

[16] *United States v. Maumau*, 993 F.3d 821, 830 (10th Cir. 2021) (alteration in original) (quoting *Freeman v. United States*, 564 U.S. 522, 526 (2011)).

[17] Pub. L. No. 115-391, 132 Stat. 5194.

[18] 18 U.S.C. § 3582(c)(1)(A); *see United States v. McGee*, 992 F.3d 1035, 1042 (10th Cir. 2021).

[19] *United States v. Hald*, 8 F.4th 932, 942 (10th Cir. 2021) (emphasis omitted) (quoting *McGee*, 992 F.3d at 1043).

[20] *McGee*, 992 F.3d at 1043 (citation omitted).

[21] *See United States v. Hemmelgarn*, 15 F.4th 1027, 1031 (10th Cir. 2021).

### B. Extraordinary and Compelling Reasons

Section 3582(c)(1)(A) requires a district court to find that "extraordinary and compelling reasons warrant a sentence reduction" before it may grant the motion. The court has "the authority to determine for [itself] what constitutes 'extraordinary and compelling reasons.'"[22] That authority "is bounded by the requirement . . . that a reduction in sentence be consistent with applicable policy statements issued by the Sentencing Commission."[23] Before November 1, 2023, the Sentencing Commission had not issued a policy statement "applicable" to § 3582(c)(1)(A) motions filed by a defendant.[24] Thus, § 3582(c)(1)(A)'s consistency requirement did not constrain the Court's discretion to consider whether extraordinary and compelling reasons warranted a sentence reduction.[25]

On November 1, 2023, a new Sentencing Commission policy statement became effective that is "plainly applicable to motions for sentence reduction filed by either the Director of the Bureau of Prisons or a defendant."[26] The policy statement lists grounds that constitute extraordinary and compelling circumstances and provides additional guidance for courts. The listed grounds are medical circumstances, age, family circumstances, whether the defendant was a victim of abuse while in custody, "other reasons," and whether the defendant served an "unusually long sentence" where there has been a change in law.[27] The Sentencing Commission "considered but specifically rejected a requirement that 'other reasons' be similar in nature and

---

[22] *United States v. Maumau*, 993 F.3d 821, 832 (10th Cir. 2021).

[23] *Id.*

[24] *See id.*

[25] *Id.* at 836–37.

[26] *United States v. Bradley*, 97 F.4th 1214, 1217 at n.1 (10th Cir. 2024).

[27] U.S.S.G. § 1B1.13(b).

consequence to the specified reasons."[28]  Rather, the catch-all provision allows the Court to consider any circumstances which are similar "in gravity" to the listed categories.[29]

Roberson offers that he is serving an unusually long sentence and that the following changes in the law constitute an extraordinary and compelling reason for compassionate release: (1) the Fair Sentencing Act of 2010 and the First Step Act of 2018 operate to lower sentences based on crack cocaine by retroactively applying the significant change in the 100:1 crack-powder cocaine disparity to an 18:1 disparity; and (2) the First Step Act limited the scope of convictions that can be used to enhance penalties through 21 U.S.C. § 851.  Roberson further argues that compassionate release is warranted based on the sentencing disparity between he and his codefendants.

### 1. Unusually Long Sentence

Roberson argues that his sentence represents an unusually long sentence under Sentencing Guideline § 1B1.13(b)(6) that should be reduced because, under the law today, he would receive a lower sentence based on changes in the law.

Under the policy statement, an "unusually long sentence" may form the basis of extraordinary and compelling circumstances as follows:

> If a defendant received an unusually long sentence and has served at least 10 years of the term of imprisonment, a change in the law (other than an amendment to the Guidelines Manual that has not been made retroactive) may be considered in determining whether the defendant presents an extraordinary and compelling reason, but only where such change would produce a gross disparity between the sentence being served and the sentence likely to be imposed at the time the motion is filed, and after full consideration of the defendant's individualized circumstances.[30]

---

[28] U.S.S.G., Supp. to App'x C, Amend. 814, at 207 (2023).

[29] *Id.*; U.S.S.G. § 1B1.13(b)(5).

[30] U.S.S.G. § 1B1.13(b)(6).

Roberson suggests that because he has served more than ten years on his current life sentence, compassionate release is required. But the ten-year requirement is simply a gate-keeping mechanism for defendants employing section 1B1.13(b)(6) to seek compassionate release. While Roberson has indeed served more than ten years of his life sentence and can otherwise raise a claim under section 1B1.13(b)(6), under the plain terms of that guideline, the mere fact that he has served ten years alone does not warrant compassionate release.

### a. Changes in Crack-Powder Disparity

Roberson does argue that there have been statutory changes relative to crack cocaine sentences and that his sentence on Count 1 for conspiracy to distribute crack cocaine therefore should be reduced considering the changes imposed by the Fair Sentencing Act of 2010 and the First Step Act of 2018. The Fair Sentencing Act of 2010 increased the drug amounts triggering mandatory minimums for crack cocaine trafficking offenses from 5 grams to 28 grams with respect to the 5–year mandatory minimum, and from 50 grams to 280 grams with respect to the ten–year mandatory minimum (while leaving powder at 500 grams and 5,000 grams, respectively).[31] This statutory change effectively lowered the 100–to–1 crack-to-powder ratio to 18–to–1 and also eliminated the 5-year mandatory minimum for simple possession of crack cocaine.[32]

Then in 2018, Congress passed the First Step Act, which made the Fair Sentencing Act's benefits retroactively applicable to offenders who committed offenses *prior to* the 2010 Fair Sentencing Act's effective date of August 3, 2010.[33] The First Step Act did not make the Fair

---

[31] Fair Sentencing Act of 2010, Pub. L. No. 111-220, § 2(a), 124 Stat. 2372.

[32] *Dorsey v. United States*, 567 U.S. 260, 264 (2012).

[33] *United States v. Mannie*, 971 F.3d 1145, 1147 (10th Cir. 2020).

Sentencing Act retroactive to cases that had already been sentenced at the time the First Step Act was passed in 2018.[34]  Roberson was convicted in 2014 and sentenced in 2015, well after passage of the First Step Act.  There was no intervening change in the law relative to Roberson's convictions on Counts 1 or 2, so the First Step Act would not have changed Roberson's sentence of life in prison.

### b.  Changes in Section 851 Enhancements

The First Step Act also made changes to the enhancement of mandatory minimums pursuant to 21 U.S.C. § 851.  Section 401 redefined the type of offense that would qualify for a § 851 enhancement, from a "felony drug offense" to a "serious drug felony."[35]  As now written, a "serious drug felony" is an offense for which "(A) the offender served a term of imprisonment of more than 12 months; and (B) the offender's release from any term of imprisonment was within 15 years of the commencement of the instance offense."[36]  Roberson had a prior conviction for a "serious drug felony" as defined in section 401 of the First Step Act.  In 2006, he was convicted of conspiracy to distribute crack and powder cocaine;[37] and he was sentenced to a term of 60

---

[34] Pub. L. No. 115-391 § 401(c), 132 Stat. 5194, 5221 (2018); *United States v. McGee*, 992 F.3d 1035, 1048 (10th Cir. 2021) ("[T]he fact a defendant is serving a pre-First Step Act mandatory life sentence imposed under § 841(b)(1)(A) cannot, standing alone, serve as the basis for a sentence reduction under § 3582(c)(1)(A)(i).  Instead, we conclude that it can only be the combination of such a sentence and a defendant's unique circumstances that constitute 'extraordinary and compelling reasons' for purposes of § 3582(c)(1)(A)(i).").

[35] *Id.*

[36] 21 U.S.C. § 802(57).

[37] There is no support for Roberson's argument that the conspiracy conviction was an inchoate offense not subject to enhancement under 21 U.S.C. § 851.  The penalties for distribution of controlled substances are set out in 21 U.S.C. § 841(b) and 21 U.S.C. § 846 provide that any person who *conspires to commit* any offense in this statutory subchapter, which includes offenses in § 841, shall be subject to the same penalties, which includes mandatory minimums.  Thus, the enhancement of mandatory minimums for those with a prior qualifying conviction are subject to such enhancement under § 851.  Indeed, § 851(a) states that it applies to anyone convicted of an offense "under this part," meaning under this statutory subpart of Title 21.

months imprisonment, with a statutory maximum sentence of 40 years. Furthermore, his release from the term of imprisonment was clearly within 15 years of the instant offense.[38]

Thus, *if* the First Step Act applied retroactively to Roberson, his sentence on Counts 1 and 2 would not have borne a mandatory minimum of life imprisonment, but instead a mandatory minimum of 15 years to life. However, as explained above, the First Step Act does *not* apply retroactively to Roberson. And even if it did apply retroactively, it would not have affected Roberson's sentence of life imprisonment for the murder conviction in Count 3. For even if the Court had sentenced Roberson to 15 years on Count 1, he would still have a controlling sentence of life imprisonment because of Count 3.

### c. Error in § 851 Enhancement on Count 2

Nonetheless, the Government points out a problem with the sentence on Count 2 that is not related to the First Step Act or any other intervening changes in the law. This Court sentenced Roberson to the mandatory minimum of life imprisonment on Count 2, based on the Information to Establish Prior Conviction pursuant to 21 U.S.C. § 851 that the Government filed on August 28, 2011. But at the time the Government filed that Information, Roberson had been charged in the original Indictment which charged him with only Count 1, conspiracy to distribute crack cocaine. Later, on October 19, 2011, the Grand Jury returned a Superseding Indictment that added Count 2, conspiracy to distribute powder cocaine and Count 3, the murder charge. But the Government never filed another Information that served to give notice of enhancement of the mandatory minimum for Count 2. Given that the August 28, 2011 Information preceded the filing of the Superseding Indictment, the Government never provided the requisite notice of

---

[38] Roberson's state court conviction for possession of methamphetamine for which he served a term of 30 months' imprisonment beginning in 1999 would not qualify as a serious drug felony as defined in section 401, as an offense for mere possession is not a serious drug felony and this offense did not carry a maximum penalty of 10 years or more.

enhancement of the mandatory minimum for Count 2. Thus, the Court should have not enhanced the mandatory minimum on Count 2. This error escaped the notice of the Court, Roberson, and the Government throughout the lengthy procedural history in this case but must be rectified now. Therefore, the Court finds an extraordinary and compelling circumstance to grant relief on Count 2 and reduce the sentence to 120 months, the proper mandatory minimum, because it should not have been subjected to an enhanced mandatory minimum. This 120-month sentence will run concurrently to Roberson's concurrent life sentences on Counts 1 and 3.

### 2. Disparity in Sentences Between Codefendants

Finally, Roberson urges that the disparity in his sentence relative to his codefendants is an extraordinary and compelling reason justifying compassionate release. Though Roberson was indicted with seven codefendants in Counts 1 and 2, only Roberson and codefendant Virok Webb were charged with the murder in Count 3 of the Superseding Indictment. Webb pled guilty to Count 1, conspiracy to distribute crack cocaine, and this Court sentenced him to 360 months imprisonment. Thus, Roberson is the only defendant in this case convicted of murder.

The evidence at trial proved that Roberson brutally murdered Crystal Fisher shortly after midnight on March 3, 2010, only hours after she was approached by law enforcement seeking her cooperation in their investigation of Webb and Roberson's drug trafficking organization. The Court previously outlined this evidence in detail in its Memorandum and Order denying Roberson's motion for judgment of acquittal.[39] Circumstantial evidence established a timeline that tracked Roberson's actions on March 2 and 3, at the time of the murder and after the murder. Shortly after meeting with law enforcement at 4 p.m. on March 2, Fisher told Webb that law enforcement was asking her to cooperate. Webb responded by meeting with Roberson, Jamaica

---

[39] Doc. 700 at 9-17.

Chism, and Alisha Escobedo at Chism's house before nightfall on March 2. There, Roberson directed Chism to clean his gun and Webb directed Chism to move all of the drugs stored at her house in case law enforcement came to search. Meanwhile, Roberson and Webb had multiple phone and text conversations with Fisher throughout the evening. Fisher texted Roberson about meeting him later that night. From 10:07 to 10:40 p.m. there was a long string of texts between Roberson and Fisher.

Webb left Chism's house, directing Chism to have Escobedo pick up Roberson later that night. Webb also advised them that he was going to Walmart to be "seen on the cameras."

Roberson left Chism's house with his gun, wearing dark clothing. Before Roberson departed, he instructed Chism and Escobedo to pick him up in the alley behind some specific apartments in about 15 to 20 minutes. Roberson also mentioned to them he was going to use a pay phone.

At 11:10 p.m., Fisher received a phone call from a pay phone near the murder scene. The last text activity on Fisher's phone was at 11:45 p.m., when she texted Roberson, "You there?" About 20 minutes later dispatch received the first 911 call concerning the murder and police arrived at the murder scene at 12:07 a.m., finding Fisher dead. Fisher had been shot four times at close range, through her car window. Meanwhile, from 12:06 to 12:15 a.m., Webb repeatedly called Chism asking her if she had heard from Roberson. At 12:21 Roberson contacted Webb; and Chism and Escobedo rushed to pick up Roberson, about two blocks from Chism's house and about 10 blocks from the murder scene. As Escobedo drove, Roberson nervously and breathlessly muttered "rat bitch" and ordered Escobedo to "go-go!" Roberson, still wearing the dark clothing appeared to be wiping an object. Chism refused his demands to take the object and drop it in the lake for him; instead Chism and Escobedo exited Escobedo's car, and Roberson

11

drove off in the car. Around 1:27 a.m., Roberson called his wife to meet him; she complied, following him as he drove Escobedo's car in a circuitous route until he parked at Walmart. Roberson and his wife stayed inside Walmart for 30 minutes, where Roberson pointedly avoided acknowledging Webb as they walked past each other in the store. Law enforcement later recovered a gun from the lake near Walmart that Chism testified looked like the gun she cleaned for Roberson that night and that Antonio Cooper testified looked like the gun he supplied to Webb about a week before the murder.

In addition to this wealth of circumstantial evidence, numerous people testified that Webb told them that Roberson killed Fisher. Raschon Smith testified that after the murder, Roberson asked Smith if he wanted to join Webb and Roberson's drug organization and "get rid of rats around here;" and Roberson admitted to Smith that he had killed Fisher in her car and tossed his gun into the lake. Cooper testified that Roberson admitted to him that he killed Fisher. And Barbara Shaw, a regular drug customer, testified that when Roberson was concerned that she had snitched, Roberson intimidated her by saying "look what I did to Crystal," and "look what happened to her."

In short, while Webb may have conspired with Roberson to kill Fisher and other codefendants may have acted as accessories before or after the fact, it was Roberson who murdered her. Roberson's conviction on Count 3 led to his life sentences on Counts 1 and 3.

### C.    18 U.S.C. § 3553 Factors

If Roberson established an extraordinary and compelling reason for relief on Counts 1 or 3, which he has not, the Court would find that the factors set forth in § 3553(a) viewed in light

of post-sentencing developments, would not warrant relief.[40]  Those factors include: (1) "the nature and circumstances of the offense and the history and characteristics of the defendant"; (2) "the need for the sentence imposed . . . to reflect the seriousness of the offense, to promote respect for the law, and to provide just punishment for the offense"; (3) "the need for the sentence imposed . . . to afford adequate deterrence to criminal conduct"; (4) "the need for the sentence imposed . . . to protect the public from further crimes of the defendant"; and (5) "the need to avoid unwarranted sentence disparities among defendants with similar records who have been found guilty of similar conduct."[41]  "[T]he facts allegedly establishing extraordinary and compelling reasons for release . . . . are relevant to the § 3553(a) analysis."[42]

These factors weigh heavily against compassionate release.  As detailed above, Roberson murdered Fisher just hours after she had been approached by law enforcement officials seeking her cooperation in their investigation of Webb and Roberson's drug trafficking organization. Roberson threatened Shaw by alluding to his murdering Fisher when he thought Shaw might snitch on the drug organization.  Roberson tried to recruit Smith to take care of other snitches. The circumstances of the offense justify a life sentence.

The history and characteristics of Roberson also justify a life sentence.  Roberson had an exceptionally long history of criminal conduct, resulting in his being scored at Criminal History Category VI, the highest category under the Sentencing Guidelines.  This score did not include his six juvenile convictions for property offenses and his one juvenile conviction for aggravated battery.  The criminal history score also did not include adult convictions for firearms, domestic

---

[40] *United States v. Bradley*, 97 F.4th 1214, 1218 (10th Cir. 2024) (quoting *United States v. Hald*, 8 F.4th 932, 943 (10th Cir. 2021)).

[41] 18 U.S.C. § 3553(a).

[42] *United States v. Bradley*, 97 F.4th 1214, 1218 (10th Cir. 2024) (quoting *United States v. Hald*, 8 F.4th 932, 943 (10th Cir. 2021)).

battery, evading and resisting arrest, obstruction, possession of marijuana, failure to identify while a fugitive, and possession of cocaine. Roberson also had a prior federal felony drug conviction in this Court. In 2006, he was convicted of conspiracy to distribute powder and crack cocaine and was still on supervised release for that conviction at the time he was arrested in this case. Roberson had four pages of other, unscored adult convictions in the PSR as well.[43]

A life sentence is needed to address the seriousness of the offense, to specifically deter criminal conduct of Roberson and to protect the public from further crimes of Roberson who demonstrated a callous, unremorseful, and unrepentant course of criminal behavior throughout his life. A life sentence also provides general deterrence to those who might be inclined to kill someone cooperating with law enforcement against them.

And there is no unwarranted sentencing disparity here. Life sentences for murder and for murder of informants are not uncommon. Roberson's life sentence is warranted because he was the one who actually killed Fisher, distinguishing himself from Webb who conspired with him and received a 30-year sentence, and from the other codefendants who at most were accessories before and after the fact.

Roberson has served approximately 14 years for his crimes, and his release now would run counter to all of the factors under section 3553(a). And while the Court commends Roberson for taking a variety of courses in prison, this post-sentencing conduct does not outweigh the nature and circumstances of the offense and the history and characteristics of Roberson as explained above.

While the Court finds that there is an extraordinary and compelling reason to grant relief on Count 2, because the proper mandatory minimum on that count is 10 years, not life,

---

[43] Doc. 735 at 27–30.

Roberson's sentences of life on Counts 1 and 3 were not erroneous in any respect and there is no extraordinary and compelling reason to grant relief on those counts. In sum, Roberson fails to establish any of the three prerequisites for compassionate release under 18 U.S.C. § 3582(c)(1)(A) for Counts 1 and 3 but does for Count 2.

### IV.    Motion for Appointment of Counsel

Finally, Roberson has filed a Motion for Appointment of Defense Counsel, in which he seeks appointment of counsel to assist him in preparing and filing this motion for compassionate release under 18 U.S.C. § 3582(c)(1(A). The Court denies the motion. There is no constitutional right to counsel after direct appeal.[44] Moreover, Defendant's motion demonstrates that he is quite capable of preparing and filing the instant motion, in which he raises substantive grounds for relief, relying upon legal authority and citing to the lengthy procedural record in this case.[45]

Roberson further argues in his reply to the Government's response that the error in the mandatory minimum for Count 2, which the Government identified in its response and which the Court rectifies in this order, justifies the Court appointing Roberson counsel to conduct an investigation into whether there were other errors. There is no basis for such an investigation and no basis to appoint counsel. Roberson bears the burden to convince this Court to appoint counsel.[46] He has fallen short of that obligation; consequently, his motion to appoint counsel must be denied.

---

[44] *Coronado v. Ward*, 517 F.3d 1212, 1218 (10th Cir. 2008).

[45] *Williams v. Meese*, 926 F.2d 994, 996 (10th Cir. 1991) (In determining whether to appoint counsel, a district court generally weighs several factors, including: (1) the merits of the defendant's claims, (2) the nature of the factual issues raised, (3) the defendant's ability to argue his claims independent of counsel's assistance, and (4) the complexity of the arguments raised).

[46] *McCarthy v. Weinberg*, 753 F.2d 836, 838 (10th Cir. 1985).

**IT IS THEREFORE ORDERED BY THE COURT** that Defendant Marcus Roberson's Motion for Compassionate Release (Doc. 915) is **granted in part and denied in part.** The sentence on Count 2 of the Superseding Indictment is reduced to 120 months, to run concurrently with the sentences on Counts 1 and 3. The motion for compassionate release on Counts 1 and 3 is **denied.**

**IT IS FURTHER ORDERED BY THE COURT** that Defendant Marcus Roberson's Motion for Appointment of Counsel (Doc. 916) is **denied.**

**IT IS SO ORDERED.**

Dated: March 11, 2025

                                            S/ Julie A. Robinson
                                            JULIE A. ROBINSON
                                            UNITED STATES DISTRICT JUDGE